## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ……………………………………….……......iii

I.    INTRODUCTION………………………………………………….......1

II.   QUESTIONS PRESENTED………………………………………....3

III.  FACTUAL AND PROCEDURAL HISTORY……………………….....5

IV.  ARGUMENT………………………………………………….........9

      A.    Motion for Judgment on the Pleadings Pursuant to
             Fed. R. Civ. P.12(c)…………………………………………....12

      B.    The Pleadings Demonstrate There Was No Violation of the FCA
             as a Matter of Law …………………………………………………16

            1.    Relator's Claims Fail to Satisfy the Requisite Element of
                   Falsity as There Was No "Renumeration" …………………...17

                 i.    No Remuneration Exists Pursuant to the AKS'
                         Employee Safe Harbor Provision ………………......19

            2.    Relator's Claims Fail as a Matter of Law Where
                 Her Own Allegations Establish that She Did Receive
                 the Service That Was Billed and Thus the Requisite
                 Element of Causation Cannot Be Satisfied …………………..22

            3.    Relator's Own Allegations of a 'Billing Error'
                 Demonstrate that Defendants Lacked the Requisite
                 Scienter for Relator's FCA Claims to Proceed…………… …23

            4.    Whether the Billing NPI# Matched the Physician
                 Performing Relator's Eye Examination Was Not
                 Material to the Government's Decision to Pay Her
                 Claim …………..…………………………….....................25

i

C.     The Information Upon Which Relator's Claim is Based
Was Already Publicly Disclosed, Such that Relator Cannot
Be an Original Source ……………………...............................................30

D.     The Intracorporate Conspiracy Doctrine Precludes Relator's
Claim for an Alleged Violation of § 3729(a)(1)(C)(Count III)……..37

V.     MOTION FOR ATTORNEYS' FEES FOR THE FRIVOLOUS,
VEXATIOUS, AND HARASSING LITIGATION PURSUANT
TO 31 U.S.C. § 3730 (d)(4) ……….................................................39

A.     The Claims Are Frivolous…………………………………………...40

B.     The Vexatious and Harassing Conduct ……………………………..44

VI.    CONCLUSION………………………………………………………45

# TABLE OF AUTHORITIES

## Cases

*Alejandro v. Philadelphia Vision Center*,
18-2150-HB (E.D. Pa. 2018)…………………………………….........5, 9, 34, 39

*Ashcroft v. Iqbal*, 556 U.S. 662  (2009)……………………………………12,13, 24

*Barnes Found. v. Township of Lower Merion*,
242 F.3d 151 (3d Cir. 2001)………………………………………………….41

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)  ………………………………………………….........12, 24

*Buck v. Hampton Twp. Sch. Dist.*
452 F.3d 256 (3d Cir. 2006)……………………………………………….........5,13

*Caprio v. Healthcare Revenue Recovery Grp., LLC*,
709 F.3d 142 (3d Cir. 2013) ……………………………………………………12

*Foglia v. Renal Ventures Management, LLC*,
754 F.3d 153, 156 (3d Cir. 2014)………………………………….........13, 15, 16

*Foglia v. Renal Ventures Mgmt., LLC,* 2015 U.S. Dist. LEXIS 29487,
2015 WL 1104425 (D.N.J. 2015) …………………………………………….13

*Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297
(3d Cir. 2003) ………………………………………………………………….3, 38

*Hericks v. Lincare Inc.*, 2014 U.S. Dist. LEXIS 39706
(E.D. Pa. 2014)…..……………………………………………………...........20

*Hutchinson v. Staton*, 994 F.2d 1076 (4th Cir. 1993)………………………….44

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)…………………………………………………...14

*In re Natural Gas Royalties Qui Tam Litigation*,
845 F.3d 1010 (10th Cir. 2017)……………………………………………………41

*Pencheng Si v. Laogai Rsch. Found.*,
71 F. Supp. 3d 73 (D.D.C. 2014)……………………………………….........38

*State v. Harden,* 938 So. 2d 480 (Fla. 2006)……………………………………….21

*United States v. Medtronic, Inc.*, 327 F. Supp. 3d 831
(E.D. Pa. 2018) ……………………………………………………………………37

*United States v. Wavefront LLC*, 2021 U.S. Dist. LEXIS 912,
2021 WL 37539 (D.N.J. 2021) …………………………………………………3, 38

*U.S. ex rel. Atkinson v. Pennsylvania Shipbuilding Co.*,
528 F.Supp.2d 533 (E.D. Pa. 2007)……………………………...........40, 41, 44

*U.S. ex rel. Advocates for Basic Legal Equality, Inc. v. U.S. Bank,
N.A.*,816 F.3d 428 (6th Cir. 2016)……………………………….................35

*U.S. ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*,
2014 WL 4375638 (E.D. Pa. 2014)……………………………………….31-33

U.S. ex rel. Doe v. Staples, Inc., 932 F.Supp.2d 34
(D.D.C. 2013)……………………………………………………….........31

*United States ex rel. Druding v. Care Alts., Inc.*, 952 F.3d 89
(3d Cir. 2020)……………………………………………………………...17

*United States, ex rel. George v. Fresenius Medical Care*, 841
F.3d 927 (11th Cir. 2016) ………………………………………………………32

*U.S. ex rel. Green v. Service Contract Educ. And Training
Trust Fund*, 843 F.Supp.2d 20 (D.D.C. 2012)…………………………………..31

*United States ex rel. Greenfield v. Medco Health Sols., Inc.*,
880 F.3d 89 (3d Cir. 2018)……………………………………………17, 18, 22

*United States ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038
(10th Cir. 2004)…………………………………………………………………40

*U.S. ex rel. Minna Ree Winer Childen's Class Trust v. Regions
Bank of Louisiana*, 1996 WL 264981 (E.D. La. 1996)………………………..41, 45

*U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*,
812 F.3d 294 (3d Cir. 2016)……………………………………………2, 30, 37

*United States ex rel. Petratos v. Genentech, Inc.*,
855 F.3d 481 (3d Cir. 2017)……………………………………………17, 27

*U.S. ex rel. Repko v. Guthrie Clinic, P.C.*, 490  Fed. Appx. 502
(3d Cir. 2012) …………. ………………………………………………………31

*United States ex rel. Scalamogna v. Steel Valley Ambulance*,
2018 WL 3122391 (W.D. Pa. June 26, 2018)…………………………………...13

*United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235 (3d Cir. 2004)………..18

*United States ex rel. Spay v. CVS Caremark Corporation*,
875 F.3d 746 (3d Cir. 2017) …………………………………………………27

*United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295
(3d Cir. 2011)……………………………………………………………...17

*U.S. ex rel. Williams v. Renal Care Group, Inc.*, 696 F.3d 518
(6th Cir. 2012)…………………………………………………………….....27

*United States ex rel. Wood v. Allergan, Inc.*, 246 F. Supp. 3d 772,
805 (S.D.N.Y. 2017), and 899 F.3d 163 (2d Cir. 2018) ……………………...........19

*Universal Health Services, Inc. v. U.S.*, 136 S. Ct. 1989
(2016) …………………………………………………..2, 3, 10, 25, 27, 29, 30, 43

## Statutes

31 U.S.C. § 3729(a)(1)(A)……………………………………………………...16

31 U.S.C. § 3729(a)(1)(C)……………………………………………….....3, 4

31 U.S.C. § 3729(a)(1)-(2)……………………………………………..23

31 U.S.C. § 3729(a)(1)(G)……………………………………………...16

31 U.S.C. § 3730 (d)(4)……………………………………………...39

31 U.S.C.A. § 3730(e)(4)(A)……………………………………………31

42 U.S.C. § 1320a-7b(b)……………………………………………..18

42 U.S.C. § 1320a-7b(b)(3)(B)……………………………………………3,4, 20

## Other Sources

Medicare and Medicaid Programs, Fraud and Abuse OIG
Anti-Kickback Provisions, 54 Fed. Reg. 3088, 3093 (Jan. 23, 1989)…………….21

Medicare and State Health Care Programs: Fraud and Abuse; OIG
Anti-Kickback Provisions, 56 Fed. Reg. 35,952, 35,981 (July 29, 1991)………...21

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA and** : | |
| **STATE OF PENNSYLANIA,** : | |
| : | **NO. 2:20-cv-02027-GJP** |
| **Plaintiffs** : | |
| : | |
| *ex rel.* **ALISHA ALEJANDRO,** : | |
| : | |
| **Relator** : | |
| : | |
| **v.** : | |
| : | |
| **PHILADELPHIA VISION CENTER,** : | |
| **BARCO OPTICAL, INC., BRUCE** : | |
| **RUBIN and DE. BETH BROOKS,** : | |
| : | |
| **Defendants** : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS MOTION PURSUANT TO FED. R. CIV. P. 12(C)**

## I.   INTRODUCTION

Relator's *qui tam* action under the Federal False Claims Act ("FCA") fails as

a matter of law for multiple, independent, reasons:[1]

1.         Defendants, Philadelphia Vision Center (improperly named),

Barco Optical, Inc., Bruce Rubin and Beth Brooks, O.D. ("Defendants"), by and

through their counsel, The Beasley Firm, LLC, hereby move for judgment on the

---

[1] Whether accidental or otherwise, the alleged law upon which Relator's Complaint is based is simply not the law. As set forth in more detail, *infra*, Relator's omission of the word "material" from her citation to the FCA (See, e.g. ECF #1 ¶ 31) cannot salvage her claims, in any event.

1

pleadings:

Relator's *qui tam* action under the Federal False Claims Act ("FCA") fails as a matter of law for multiple, independent, reasons:

1.      Defendant Barco's "error" in using Defendant Brooks' NPI number to bill for the medical services that another (non-Defendant) optometrist, also employed by Barco, provided to Relator was not "material" to the government's decision to pay for the services provided to Relator. The requisite element of materiality cannot be met "where noncompliance *is minor or insubstantial.*" *Universal Health Services, Inc. v. U.S.*, 136 S. Ct. 1989 (2016).

2.      All of the factual underpinnings of Relator's claims were publicly disclosed on websites, the media, and even by direct statements to the third-party government administrators more than a year prior the filing of this action.  A relator's suit under the False Claims Act fails as a matter of law where the allegations have already been subject to public disclosure. *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC,* 812 F.3d 294 (3d Cir. 2016).

3.      Relator's claims, all of which stem from an alleged violation of the Anti-Kickback Statute ("AKS"), fail as a matter of law because Defendant Brooks was an employee of Defendant Barco Optical (Complaint at ¶ 20). Under the bona fide employee safe harbor of the AKS, payments to employees "for employment in the furnishing of any item or service for which payment may be made

in whole or in part under [ ] Federal health care programs" is not considered remuneration and therefore, cannot form the basis of the AKS violation. 42 U.S.C. § 1320a-7b(b)(3)(B).

4.     Relator could not assert a conspiracy claim (Count IV) against either Defendant under 31 U.S.C. § 3729(a)(1)(C) because the claim would be barred by the intra-corporate conspiracy doctrine where Defendant Brooks was an employee of Defendant Barco Optical (Complaint at ¶ 20). The Intra-corporate conspiracy doctrine stands for the proposition that "an entity cannot conspire with one who acts as its agent." *United States v. Wavefront LLC*, 2021 U.S. Dist. LEXIS 912, *28, 2021 WL 37539 (D.N.J. 2021), citing *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313-14 (3d Cir. 2003).

The infirmities of Relator's claims under the law are manifest and manifold; all are devoid of merit. Defendants are entitled to judgment on the pleadings.

## II.     **QUESTIONS PRESENTED**

1.     Are the Defendants entitled to judgment on the pleadings where the billing practices at issue were "minor or insubstantial" errors that were not material to payment of a claim pursuant to the United States Supreme Court's mandates in *Universal Health Services, Inc. v. U.S.*, 136 S. Ct. 1989 (2016).

**Suggested Answer**: Yes.

2.  Are the Defendants entitled to judgment on the pleadings where the factual

underpinnings of Relator's claims were publicly disclosed on websites, the media, and even by direct statements to the third-party government administrators more than a year prior the filing of this action?

**Suggested Answer**: Yes.

3.      Are the Defendants entitled to judgment on the pleadings where, under the bona fide employee safe harbor the AKS, payments to employees "for employment in the furnishing of any item or service for which payment may be made in whole or in part under [ ] Federal Health Care programs" is not considered remuneration and therefore, cannot form the basis of the AKS violation pursuant 42 U.S.C. § 1320a-7b(b)(3)(B).

**Suggested Answer**: Yes.

4.      Are the Defendants entitled to judgment on the pleadings where Relator cannot assert an FCA conspiracy claim (Count III) against either Defendant under 31 U.S.C. § 3729(a)(1)(C) because the claim would be barred by the intra-corporate conspiracy doctrine where Defendant Brooks was a contract employee of Defendant Barco Optical (Complaint at ¶ 20).

**Suggested Answer**: Yes.

### III. __FACTUAL AND PROCEDURAL HISTORY__[2]

Relator filed this *qui tam* action on behalf of the United States on April 28, 2020. Complaint (ECF #1). On July 7, 2020, the United States Attorney's Office declined to intervene. (ECF #2). Defendants filed an Amended Answer to Plaintiffs' Complaint on February 11, 2021 (ECF #21).

Defendant Bruce Rubin is the owner of Barco Optical who operates Philadelphia Vision Center, a small eye glass store in the Philadelphia. ECF #1 at ¶ 19. This lawsuit is one of several that stems from Relator's eye examination that occurred on December 8, 2016.[3] Relator was a patient of Louisa Gaiter Johnson, O.D., who at relevant times was employed by Defendants Barco Optical. *Id* at ¶ 39. Relator received a standard eye examination. *Id*. at ¶ 40. At the time of the examination, Relator had optical insurance through Superior Vision, a third-party

---

[2] For purposes of the Factual and Procedural Background, Defendants have only cited to the Complaint (ECF #1) as well as "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." See, infra, *Buck v. Hampton Twp. Sch. Dist*. 452 F.3d 256, 260 (3d Cir. 2006) (internal quotation marks and citation omitted).

[3] Relator Alejandro was the Plaintiff in a prior lawsuit against Defendants captioned *Alejandro v. Philadelphia Vision Center*, 18-2150-HB (E.D. Pa. 2018) (the "Prior Action"). Additionally, Defendant Bruce Rubin is the Plaintiff in a wrongful use of civil proceedings action, brought to correct the damages caused by Relator's attorney, Paul A.R. Stewart, Esq., and Relator (Phila. C.C.P. Oct. 2018, No. 2397) ("the *Dragonetti* Action").

administrator for Pennsylvania's Medicaid program. *Id.* at ¶¶ 23, 43. Following the appointment, Defendant Rubin billed Superior Vision for the services provided by Dr. Johnson. *Id* at 41. However, when performing the billing Defendant Rubin used a NPI number from a different optician employed at Barco. *Id.* Superior Vision paid Relator's claim. *Id.* at ¶ 43; *Id.* at Exhibit "A."

Shortly thereafter, Relator filed a lawsuit against Defendants Philadelphia Vision Center (improperly named), Bruce Rubin and Dr. Johnson alleging violations of the Sherman Antitrust Act, the Clayton Act, the Pennsylvania Unfair Trade Practice and Consumer Protection Law, and Civil Conspiracy ("the Prior Action"). The Third Amended Complaint from the Prior Action is attached as Exhibit "A." During discovery in the Prior Action, Relator learned – albeit through her counsel and the testimony of Bruce Rubin – that Defendants billed her eye examination to the incorrect doctor. ECF #1 at ¶ 50. Specifically, during the deposition of Defendant Rubin, Relator's counsel – not the Relator – learned that Defendant Rubin billed relator's eye examination using the incorrect doctor's NPI number. *Id.*

On April 11, 2018, within days of the deposition, Defendant Rubin sent a letter to Superior Vision that explained the billing issue and requested assistance with future billing. *See*, Exhibit "C" to ECF #1. Mr. Rubin reported:

…

6

On March 27, 2018 I was deposed by Mr. Stewart and provided him with certain documents he requested. One of these documents was the EOB indicating we were paid for the exam done in December by Dr. Johnson. On the EOB it indicated that Beth Brooks was the provider. Mr. Stewart is now insisting that I have committed Insurance fraud based on what I believe would be classified as a billing error. As I'm sure you are aware, for billing purposes, ***I have only <u>one</u> login and it is under Dr. Brooks NPI***. ***All payments however, whether for glasses, contacts or exams are issued to Philadelphia Vision Center.*** I have been billing most services under Dr Brooks as it is more efficient, and I certainly wouldn't want to find out that I was unknowingly committing a crime.

Moving forward, it would be a great help to me if you could write me a letter indicating that you are aware of my billing practices and that that you don't intend to pursue criminal charges against me. As far as billing in the future, I have begun logging out, and logging back in to separate the claims for each doctor's exams. Is that something you require? Who's name should I bill under for glasses? Are there any written guidelines available to explain exactly how the billing should be done[?]

…

*Id* (emphases added).

Superior Vision took ***<u>no</u>*** adverse action and instead offered Defendant retraining on billing procedures. See, August 9, 2018 Declaration of Bruce A. Rubin, attached hereto *<u>in full</u>* as Exhibit "B," referenced and quoted *<u>in part</u>* in Relator's Complaint at ¶ 62. [4] This declaration, and particularly ¶¶ 14-16, were referenced by Judge Bartle in his opinion and were ***<u>uncontested</u>*** by Relator in the Prior Action:

14.    Through discovery, plaintiffs counsel learned that in billing for the

---

[4] See, also, *Alejandro v. Philadelphia Vision Center*, No. 18-2150 (E.D. Pa. 2018) (ECF #20-10) (9 August 2018 Declaration of Bruce S. Rubin, submitted in support of Motion for Summary Judgment and reference by Judge Bartle in issuing memorandum opinion granting summary judgment)

services provided by Dr. Johnson, a billing code for another doctor, Dr. Beth Lisa Brooks, was used. He then filed yet another amended pleading, the Third Amended Complaint, joining Dr. Brooks as a defendant.

15.     Under the terms of the contract with plaintiffs vision plan, payments are made in a fixed amount to Barco Optical Inc., regardless of which doctor renders the service. ***The plan pays the same rate regardless of which doctor sees the patient,*** and ***neither the plaintiff nor the vision plan sustained any financial loss as a result of the erroneous notation of Dr. Brooks***, rather than Dr. Johnson, on the billing statement submitted to the vision plan.

16.     When the billing error was discovered, the vision plan was notified and ***they took no adverse action as a result***. Instead, they offered some "***retraining on billing procedures***" to ensure that the correct coding was done on future submissions.

(emphasis added).     Using the information learned from Bruce Rubin in his deposition in the Prior Action, Relator accused Defendants of violations of the False Claims Act in a Third Amended Complaint in the Prior Action. *See* Exhibit "A", ¶¶ 67, 113-118. Those accusations, identical to those in Relator's Complaint here (ECF #1) were addressed and rejected by the Court. Judge Bartle accurately set forth the pertinent facts, including those germane to the Motion at bar, as follows:

> *Although Dr. Johnson administered the eye exam to Alejandro, PVC Welsh and Rubin mistakenly used a billing code for a different PVC Welsh optometrist, Beth Lisa Brooks, O.D., who had never examined Alejandro. After the error was discovered at some time during discovery in this action, PVC Welsh and Rubin notified the holder of Alejandro's vision insurance plan, which covered the eye exam. This error did not impact the billing or coverage of Alejandro's vision insurance plan.*

8

Memorandum at p. 4, 29 August 2018, *Alejandro v. Philadelphia Vision Center*, No. 18-2150 (E.D. Pa. 2018) (ECF #21).

Importantly, Judge Bartle's opinion was disseminated, and available to the public, on various media websites on the internet. *See,* e.g.:

- https://scholar.google.com/scholar_case?case=1540245371674877232&hl=en&as_sdt=6&as_vis=1&oi=scholarr

- https://www.docketbird.com/court-documents/Alejandro-v-Philadelphia-Vision-Center/MEMORANDUM-AND-OPINION-SIGNED-BY-HONORABLE-HARVEY-BARTLE-III-ON-8-29-18-8-29-18-ENTERED-E-MAILED/paed-2:2018-cv-02150-00021;

- https://dockets.justia.com/docket/pennsylvania/paedce/2:2018cv02150/542983;

- https://www.govinfo.gov/app/details/USCOURTS-paed-2_18-cv-02150/USCOURTS-paed-2_18-cv-02150-0.

Using these identical allegations from the Prior Action, Relator filed the present *qui tam* complaint on behalf of the government. The factual basis of her claims are replete with references to (1) the underlying record and (2) publicly disclosed information.

For the reasons set forth, *infra*, Relator claims fail as a matter of law.

## IV.   **ARGUMENT**

It is axiomatic to that neither a Court nor a jury could render relief to a litigant

for claims that are not brought pursuant to the law; but that is the circumstance in which Defendants file this Motion for Judgment on the Pleadings.

Relator's Complaint purports to rest on the False Claims Act ("FCA") to provide the relief she seeks. Yet, nowhere in Relator's Complaint does the she cite to the ***applicable*** FCA. A cursory review may give that impression (see, e.g. ECF #1 at ¶¶ 3, 31).  Instead, Relator sought to rest on the *prior* version of the FCA (or otherwise omitted key text), which was revised more than ten years ago. For that reason alone, Defendants would be entitled to judgment on the pleadings.

Nonetheless, Defendants will set forth the unsurmountable legal deficiencies of Relator's Complaint under the *current* and *applicable* FCA to demonstrate that any amendment to the Complaint would be futile. The differences between the prior FCA and the current version are not inconsequential. They are wholly dispositive to Relator's claims. The FCA requires that the alleged "misrepresentation about compliance with a statutory, regulatory, or contractual requirement…be ***material*** to the Government's payment decision" (*Universal Health Services, Inc. v. U.S.*, 136 S. Ct. 1989 (2016), which is both a "rigorous" (*id* at 1996) and "demanding" (*id* at 2003) requirement. *Universal Health Services, Inc. v. U.S.*, 136 S. Ct. 1989, 1996 (2016) (unanimous opinion).

Defendants are entitled to judgment on the pleadings for multiple independent reasons.  First, Relator has not made any factual allegations of materiality – she pled

the opposite. The averments of fact in the complaint establish that this "demanding" hurdle cannot possibly met. Second, the factual backdrop upon which Relator's claims are based were publicly disclosed long before she initiated this action on media websites and even by Defendant Rubin himself to the Government, which disqualifies her as an "original source." Third, there was no "remuneration" under the Anti-Kickback Statute where the person alleged to have received the kickback was an employee of Defendants pursuant to the AKS's employee safe harbor provision. Fourth, the Complaint fails to plead facts plausibly showing that the Defendants maintained the requisite scienter of "knowingly" submitting 'fraudulent' claims, which is repeatedly shown and plead as an "error."  Fifth, Relator cannot establish causation where she did, in fact, receive the eye examination from an optometrist, which was exactly what the Defendants billed for payment – no more, no less.

Each one of these reasons, separately, compels judgment in Defendants' favor.

Finally, in addition to the above, the Defendants are all employees of Defendant Barco and, pursuant to the intracorporate conspiracy doctrine, they cannot conspire with themselves.

Accordingly, Defendants are entitled to judgment on the pleadings for all of Relator's claims.

## A.      Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c)

After the pleadings are closed but early enough not to delay trial – a party may move for judgment on the pleadings. F.R.C.P. 12(c). When a party's Rule 12(c) motion is "based on the theory that the plaintiff failed to state a claim," the motion is "reviewed under the same standards that apply to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 146-47 (3d Cir. 2013). In order to withstand a motion to dismiss, a complaint must include factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Satisfying that standard "requires *more than labels and conclusions*, and a formulaic recitation of the elements of a cause of action will not do." *Id.*[5] Rather, the pleadings "must contain sufficient *factual matter*, which if accepted as true, states a facially plausible claim for relief." *Caprio*, 709 F.3d at 147. A claim possesses such plausibility "when the plaintiff *pleads factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

---

[5] Unless otherwise indicated, all emphasis has been added.

suffice" to survive a Rule 12 motion. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

In the context of a False Claims Act Complaint, to survive a motion for judgment on the pleadings, a relator must plead "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Foglia v. Renal Ventures Management, LLC*, 754 F.3d 153, 156 (3d Cir. 2014). "'Describing a mere opportunity for fraud will not suffice,' and, instead, a plaintiff must provide "sufficient facts to establish a plausible ground for relief.'" *Foglia,* 754 F.3d at 156. This standard "does not allow for amorphous, open-ended allegations of fraud." *Foglia v. Renal Ventures Mgmt., LLC,* 2015 U.S. Dist. LEXIS 29487, *18, 2015 WL 1104425 "Reliable indicia" can come in the form of "statements on personal knowledge, specific examples, dates or providers identities[.]" *United States ex rel. Scalamogna v. Steel Valley Ambulance*, 2018 WL 3122391, *8 (W.D. Pa. June 26, 2018) (relator's failure to plead reliable indicia required dismissal of claim based on Anti-Kickback Statute).

In addition to the well-pled averments of fact, the Court may also consider any "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal quotation marks and citation omitted). "The rationale underlying this [rule] is that the primary problem raised by looking to documents outside the complaint

[is] lack of notice to the plaintiff," and this problem "is dissipated where the plaintiff has actual notice and has relied upon these documents in framing the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

As a preliminary matter, the Court may not consider the hyperbolic legal conclusions set forth in Relators Complaint.  Relator uses the heading "Factual Allegations" (¶¶ 38-66) to orient the Court to what she believes are the averments of fact supporting her claims.  However, Relator's averments commencing with "upon information and belief," which pertain to allegations of intentional, criminal, and outrageous conduct, cannot withstand the pleading necessary and are wholly unsupported – and if fact wholly belied – by Relators *actual* averments of fact. See, e.g. ¶ 52 ("Upon belief Dr. Brooks receives compensation for permitting Barco to bill using her designated NPI number despite having no contact with patient or providing any service to Barco") *contra*, ¶ 20 ("Defendant Dr. Beth Brooks is a license doctor-optometrist…Brooks is an independent contractor working for Vision Center and other locations."). Despite being mislabeled under the heading of factual background, Relator's ¶¶ 56-61, 63-68 are unquestionably mere conclusory statements of law wholly unsupported by the factual averments in the Complaint.

In *Foglia*, the Relator alleged an ***over-billing*** on the drug Zemplar. The Third Circuit reversed the District Court's dismissal of the action, which was based *solely* on the heightened pleading requirements and explained:

14

This *is a close case as* to meeting the requirements of Rule 9(b). Accepting the factual assertions made by Foglia as true, we have patient logs that *show that less Zemplar was used than would be required* if it were used in the single use fashion. We know that Medicare will reimburse for the full vial of Zemplar, regardless of whether all of the Zemplar is used, and that *this provides an opportunity for the sort of fraud alleged by Foglia*. At this point we must assume that Foglia is correct in alleging that Renal did not follow the procedures that it should have followed if it was to harvest the "extra" Zemplar from the used vials…This conclusion is further supported by the fact that [Defendants], and *__only__* [Defendants, have] access to the documents that could easily prove the claim one way or another—the full billing records from the time under consideration.

Foglia, 754 F.3d at 158.

Here, unlike in *Foglia*, Relator has alleged that Defendants billed the government for services, *which were in fact received* by Relator. ECF #1 at ¶ 39. Relator Alejandro *has attached the very billing records* at issue to her Complaint – they are not in the sole custody of Defendants unlike *Foglia*. See, ECF #1 at Exhibits B and D, respectively, attached thereto.[6]

Although these allegations fail as a matter of law on their face, discussed *infra*, Relator's Complaint lacks sufficient factual allegations to meet its requirements or the requirements of Rule 9(b). There are simply no allegations of fact showing any

---

[6] Moreover, between February 3, 2020 and March 6, 2020, Counsel for Relator reviewed and discussed a CD of billing data for the related NPI providers for a period of *2015-2019* with the Auditor for the US Attorney's office, which occurred *before* the United States declined involvement.

fraud. If *Foglia* was as "close [a] case" to meeting Rule 9(b) requirements (with allegations of *actual* <u>over</u>-billing with records *only* the in the possession of Defendants), then Relator Alejandro's Complaint alleging the opposite is not a "close case" at all – it is devoid of the necessary Rule 9(b) averments.

## B. The Pleadings Demonstrate There was No Violation of the FCA as a Matter of Law

Alejandro asserts that each of Defendants' alleged schemes violated the False Claims Act ("FCA"). The FCA provides private citizens, called "relators," the ability to bring *qui tam* lawsuits on behalf of the government to recover civil damages against defendants who submit or cause the submission of "false or fraudulent claims" for payment from the government. Relator Alejandro brings FCA claims against Defendants under the FCA provisions that impose civil liability on anyone who "knowingly causes to be presented . . . a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A), or who "knowingly . . . causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.* § 3729(a)(2), and "knowingly conspired," *id* § 3729(a)(1)(C), with each other to do so. See, Complaint at ¶¶ 69-81 (Counts I-III).[7]  Specifically, Alejandro alleges that

---

[7] Count IV of Relator's Complaint is pursuant to 31 U.S.C. § 3729(a)(1)(G), which pertains to "knowingly… *avoided* or *decreased*…obligation to pay or transmit money to the government." Of course, the facts alleged here have nothing to do with any obligation to pay the government. This section is simply inapplicable on its face.

Defendants "retained unlawful payments resulting from improper, false and fraudulent payment requests" (Complaint at ¶56) made to the government.

To show that Defendants violated the FCA, Alejandro must prove the following elements for the alleged scheme: (1) falsity; (2) causation; (3) scienter; and (4) materiality. *United States ex rel. Petratos v. Genentech, Inc.*, 855 F.3d 481, 487 (3d Cir. 2017).

### 1.    Relator's Claims Fail to Satisfy the Requisite Element of Falsity as There Was No "Remuneration"

The first element of an FCA violation is falsity. There are two kinds of falsity that are actionable under the FCA: "factual falsity" and "legal falsity." *United States ex rel. Druding v. Care Alts., Inc.*, 952 F.3d 89, 96-97 (3d Cir. 2020). A claim is "factually false" when the claimant "misrepresents what goods or services that it provided to the Government." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 305 (3d Cir. 2011). A claim is "legally false" when the claimant misrepresents that he or she has complied with "statutory, regulatory, or contractual requirement[s]." *United States ex rel. Greenfield v. Medco Health Sols., Inc.*, 880 F.3d 89, 94 (3d Cir. 2018). In cases where the relator alleges that the defendant caused the submission of false claims rather than submitting the claims itself, legal falsity exists when the defendant "created and pursued a marketing scheme that it *knew* would, if successful, result in the submission by [others] of

compliance certifications . . . that [the defendant] knew would be false." *United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 244 (3d Cir. 2004).

Alejandro advances only a "legal falsity" theory. For doctors to receive reimbursement for a claim under a federal health care program, they must certify that the claim complies with federal laws, including the Anti-Kickback-Statute ("AKS"). Alejandro asserts that "use of Dr. Brook[s'] NPI coding and location for billings for which Dr. Brooks had no contact, supervision, oversight nor actually performed medical services" is a violation of the AKS. Complaint at ¶¶59-60. Importantly, once a claim is tainted by an AKS violation, it is automatically legally "false" under the FCA. *See, United States ex rel. Greenfield v. Medco Health Sols., Inc.*, 880 F.3d 89, 95 (3d Cir. 2018).   In other words, once a violation of the AKS has been established, the first element of the FCA, falsity, has been met. The AKS is a criminal felony statute. The statute prohibits "knowingly and willfully" offering or paying any "remuneration" to induce services that may later be paid for under a federal health care program. 42 U.S.C. § 1320a-7b(b).

Alejandro alleges that Defendants Barco and Rubin violated the AKS by paying Dr. Brooks kickbacks to use her NPI# for patients "despite having no contact with [the] patient or providing any service to Barco." Complaint at ¶¶ 51-52. To establish that Defendants violated the AKS, Alejandro must plead facts demonstrating that (i) the alleged schemes involved offering or paying

"remuneration"; (ii) at least one purpose of the schemes was to "induce" the government to reimburse payment; and (iii) Defendants possessed the requisite scienter. *See id.*

### i.  No Remuneration Exists Pursuant to the AKS' Employee Safe Harbor Provision

For Alejandro to prove that Defendants violated the AKS, she must first show that the scheme involved remuneration. The AKS defines "remuneration" to include "transfers of items or services for free or for other than fair market value." *Id.* § 1320a-7a(i)(6). Courts generally interpret the term "remuneration" "expansively to include anything of value in any form whatsoever."  *United States ex rel. Wood v. Allergan, Inc.*, 246 F. Supp. 3d 772, 805 (S.D.N.Y. 2017) (internal quotation marks omitted), *rev'd on other grounds*, 899 F.3d 163 (2d Cir. 2018).

Importantly, the AKS proscribes what does ***not*** constitute an illegal "remuneration."  The OIG has enacted safe harbors designating certain practices as immune from the AKS. Under the bona fide employee safe harbor, payments to employees "for employment in the furnishing of any item or service for which payment may be made in whole or in part under Medicare, Medicaid or other Federal health care programs" is not considered remuneration and therefore, cannot form the basis of the Anti-Kickback Act violation. The text of the statute is crystal clear.

(b) Illegal remunerations.

…

(3) Paragraphs (1) and (2) ***shall not*** apply to— …

> (B) any amount ***paid by an employer to an employee*** (who has a bona fide employment relationship with such employer) for employment in the provision of covered items or services.

See, *Id.* § 1320a-7b(b)(3)(B).

Here, Alejandro has alleged that Defendant Beth Brooks "is an independent contractor ***working for*** Vision Center [Defendants] and other locations." Complaint at ¶ 20.  Barco Optical pays optometrists, including Brooks, and optometrists do not receive reimbursements directly from insurance. ECF #1 at ¶ 51.  Dr. Brooks received payment as a contracted employee for Defendant Barco. See, also, *id* at ¶ 62.  In other words, payments to Dr. Brooks by Barco cannot be considered an illegal remuneration under the AKS ***by the very text*** of the AKS.  See, also, *Hericks v. Lincare Inc.*, 2014 U.S. Dist. LEXIS 39706, *51, fn. 17 (E.D. Pa. 2014), citing 42 U.S.C. § 1320a-7b(b)(3)(B).

Although the text is overwhelmingly clear (and dispositive) the purpose of this proscription is equally apparent, when considering the inherent prejudice any defendant would sustain in being forced to rebut such conclusory allegations; specifically, it would be impossible for any employee Defendant to defend such conclusory claims when, the reality is, they *do* receive payment from the Defendant employer for a lawful purpose; here optometry services. In fact, the OIG itself

provided further explanatory confirmation here that the justification for the employee safe harbor is the legitimacy of a formalized employment relationship:

> "We are confident that the employer-employee relationship is unlikely to be abusive, in part because the employer is generally fully liable for the actions of its employees and is therefore more motivated to supervise and control them."

Medicare and State Health Care Programs: Fraud and Abuse; OIG Anti-Kickback Provisions, 56 Fed. Reg. 35,952, 35,981 (July 29, 1991).

Consistent with this justification, OIG's commentary to the proposed rule implementing the employee safe harbor noted the exception "permits an employer to pay an employee *in whatever manner he or she chooses for having* that employee assist in the solicitation of. . . health care program business[.]" Medicare and Medicaid Programs, Fraud and Abuse OIG Anti-Kickback Provisions, 54 Fed. Reg. 3088, 3093 (Jan. 23, 1989) (emphasis added). See, also, *State v. Harden*, 938 So. 2d 480, 488-89 (Fla. 2006) ("The employee safe harbor presumes a reduced potential for program abuse because of the greater degree of control that employers are presumed to exercise over their employees.")

For this independent reason alone, Relator's claims fail as matter of law as the *only* falsity alleged to have occurred is the violation of the AKS and Defendants are entitled to judgment for any claims arising from the use of Dr. Brook's NPI number where she was an employee of Defendants.

2.    **Relator's Claims Fail as a Matter of Law Where Her Own Allegations Establish That She Did Receive the Service That Was Billed and Thus the Requisite Element of Causation Cannot be Satisfied**

The second element of an FCA violation is causation. Alejandro must prove that Defendants caused "at least one" claim to be submitted to the federal government that "sought reimbursement for medical care that was provided in violation of the Anti-Kickback Statute." *United States ex rel. Greenfield v. Medco Health Sols., Inc.*, 880 F.3d 89, 98, (3d. Cir. 2018). Alejandro may not simply describe the kickback scheme in the abstract: she must "link" that scheme to a "*particular claim*" submitted to the government for payment. *Id.* at 98, 100.  In other words, Alejandro *must* show that a "particular patient (Alejandro) [was (1)] exposed to an *illegal recommendation* or referral ***and*** [(2)] a provider submit[ed] a claim for reimbursement pertaining to that patient," (i.e. her). *Id.* at 97, 100 (emphasis added).

As a preliminary matter, where there was no "illegal remuneration" because of the employee safe harbor provision, this element, logically, cannot be met. See, § IV(B)(1)(i), *supra*.

In any event, this separate and distinct element is not satisfied here for additional independent reasons. Alejandro's allegations in her complaint are wholly contrary to the requisite element of causation. She readily ***admits*** that she ***did*** receive

an eye examination from a licensed optometrist and *did* receive her prescription from that optometrist. See, e.g., ECF #1 at ¶ 39 (she "received eye examination from Doctor Johnson [ ] – the optometrist working at the Vision Center) and at ¶40 (Dr. Johnson provided eye exam services "using Dr. Johnson's NPI [ ]053"). That is not an illegal recommendation or referral – it was a routine and legal medical examination conducted by a properly licensed optometrist.

There is *no* allegation – nor could a credible one be made – that Alejandro underwent an illegal examination or that the government would not have paid for such a service had Dr. Johnson's NPI number been used instead of Dr. Brooks'. Alejandro's complaint lacks any factual allegations to support this requisite element under the FCA and instead, alleges the opposite.

### 3.   Relator's Own Allegations of a 'Billing Error' Demonstrate that Defendants Lacked the Requisite Scienter for Relator's FCA Claims to Proceed

The third element of an FCA violation is scienter. The FCA requires Defendants to behave "knowingly." 31 U.S.C. § 3729(a)(1)-(2). The FCA defines "knowingly" to mean that a person "has actual knowledge of the information" in question or acts in "deliberate ignorance" or "reckless disregard of the truth or falsity of the information." *Id.* § 3729(b). In legal falsity cases like this one, the FCA's scienter element essentially requires deliberate ignorance or reckless disregard of illegality. *See id.*

Alejandro's Complaint fails to plead any facts that demonstrate the Defendants acted to "knowingly" or "recklessly" defraud the government. First, when it comes to pleading allegations of intentional or reckless conduct, mere conclusory allegations will not suffice. See, *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). With respect to limited facts pled by Alejandro, it is plain that Defendants did not have the requisite scienter:

- As of March 2018, in sworn affidavits and numerous state court pleadings, defendant(s) acknowledge improper coding and billing ***errors***. ECF #1 at ¶ 55.

- On April 11, 2018, Defendant Rubin emailed Superior Vision benefit to explain following his sworn deposition that he had a ***billing error*** regarding Beth Brooks. *Id* at ¶ 54.

- "Under the terms of contract with Plaintiff's vision plan, payments are made in a fixed amount to Barco Optical, Inc. regardless of which doctor renders the service. *Id* at ¶ 62.

- When the billing ***error*** was discovered, the vision plan was notified and they ***took no adverse action*** as a result. Instead that offered some '***retraining on billing procedures'*** to ensure that the correct coding was done on future submissions.' *Id* at ¶ 62

Relators conclusory and hyperbolic legal conclusions are not well-plead allegations of fact and cannot be considered for purposes of the Rule 12(c) motion at bar. See, *Twombly*, 550 U.S. at 555 (satisfying that standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") There are no allegations of fact in the Complaint suggesting that Defendants acted with the requisite scienter. The pleadings of record show the contrary. See,

e.g., Complaint, ¶ 54 and letter to Superior Vision (complete version) attached to Plaintiff's Amended Answer (ECF #21) as Exhibit "A") ("As I'm sure you are aware, for billing purposes, I have only one login and it is under Dr. Brooks NPO. All Payments however, whether for glasses, contacts or exams are issued to Philadelphia Vision Center. I have been billing most services under Dr. Brooks as it is more efficient…Is that something you require? Who's name should I bill under for glasses? Are there any written guidelines available to explain exactly how the billing should be done[?]")

Alejandro has failed to plead any facts sufficient to demonstrate Defendants acted with the requisite scienter and those actually pled show the opposite.

### 4. Whether the Billing NPI# Matched the Physician Performing Relator's Eye Examination Was Not Material to The Government's Decision to Pay Her Claim

The fourth and final element of an FCA violation is materiality.  A defendant can only be found liable under the False Claims Act ("FCA") if the alleged false claim was material to the government's decision to pay the claim. *Universal Health Services, Inc. v. U.S.*, 136 S.Ct. 1989 (2016) (interpreting §3729(a)(1)(A)).  The FCA requires that the alleged "misrepresentation about compliance with a statutory, regulatory, or contractual requirement…be ***material*** to the Government's payment decision." *Id,* 136 S.Ct. at 1996. The materiality assessment "looks to the effect on

25

the likely or actual behavior of the recipient of the alleged misrepresentation." *Id,* 136 S.Ct. at 2002. This requisite ***cannot be met*** "where noncompliance ***is minor or insubstantial*.**" *Id.* The FCA is "not an all-purpose antifraud statute, or a vehicle for **punishing garden variety breaches of contract or regulatory violations**." *Id* at 2003. The materiality provision is ripe for adjudication by way of Rule 12 motion. *Id*. at 2004, fn. 6. ("We reject [Relator's] assertion that materiality is too fact intensive for courts to dismiss False Claims Act cases on a motion to dismiss or at summary judgment. ***The standard for*** *materiality* ***that we have outlined is a familiar and rigorous one***. And False Claims Act plaintiffs must also plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b) by, for instance, pleading facts to support allegations of materiality.")

Notably, "[a] misrepresentation cannot be deemed material merely because the government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to pay if it knew of the defendant's noncompliance." *Id.* at 2003-04. Similarly, evidence that establishes that the statement to the government was a clerical error that did not impact the amount of funds provided by the government program or falsify the type of health care given cannot rise to the level of material misstatements.[8] *See,* also, *United States ex rel.*

---

[8] "We <u>emphasize</u>, however, that the False Claims Act is <u>not</u> a means of imposing

*Spay v. CVS Caremark Corporation*, 875 F.3d 746, 764 (3d Cir. 2017) (providers' use of "dummy prescriber IDs" when applying for Medicare Part D payments were not material as "[t]he government did not pay for Services that were not provided, and the [Medicare Part D sponsors] did not receive any compensation for prescriptions that were never given to Medicare recipients"); *see also U.S. ex rel. Williams v. Renal Care Group, Inc.*, 696 F.3d 518 (6th Cir. 2012) (Defendants entitled to judgment as a matter of law where relator's complaint only stated bald violations of regulations that were preconditions to government's payment of a claim).

In application, the materially standard is demanding. *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481 (3d Cir. 2017). In *Petratos*, relator alleged that defendant *suppressed data* that caused doctors to certify that a cancer drug was "reasonable and necessary," which consequently affected Medicare payments. The court recognized that ***"there are no factual allegations showing that CMS would not have reimbursed the claims had these [alleged reporting] deficiencies been cured,"*** which "doom[ed]" relator's claim. *Id*. "Petratos's allegations are much like the sort of 'minor or insubstantial' noncompliance that the Supreme Court explained should ***not*** be litigated under the False Claims Act." *Id.* at 490.

---

treble damages and other penalties for *insignificant* regulatory or contractual violations." *Universal Health Servs.,* 136 S. Ct. at 2004 (emphasis added).

As an initial matter, Relator Alejandro repeatedly misstates the very text of the FCA in her Complaint; omitting the critical element of "material." See, e.g. Complaint at ¶ 3:

> 3. In connection with the receipt of reimbursement from the United States Department of Health and Human Services ("HHS"), Centers for Medicare and Medicaid Services ("CMS"), Defendant committed fraud against the Medicaid Program, by (a) knowingly presenting, and causing to be presented false and fraudulent claims for payment and approval; and (b) **knowingly making, using, and causing to be made and used, false records and statements to get false and fraudulent claims paid,** (c) knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government in violation of 31 U.S.C. §§ 3729.

See, also, ECG #1 at ¶ 31 (the word "material" wholly absent from Relator's citation to the FCA).

This omission, whether peculiarly inadvertent or otherwise, is still revealing nonetheless; the very language that Relator omitted from her Complaint is that most fatal to her claims as a matter of law. Relator completely disregards the requirement for material statements contained in the same. The FCA ***actually*** reads:

> …
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement **material** to a false or fraudulent claim
>
> …
>
> (G) knowingly makes, uses, or causes to be made or used,

a false record or statement **material** to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

*Id*. Importantly, Relator's complaint is bare on factual support for the mandatory materiality requirement. Of course, that is not surprising when she misstates the very statute upon which her claims are based.  As the Supreme Court counseled in *United Health*, conditions to payment are not automatically dispositive of materiality. There must be some pleading that the government **would actually refuse** to pay the claims submitted by Defendants. Relator's pleading makes no attempt to reconcile this glaring deficiency.

Moreover, Relator's complaint **pleads the opposite**.[9] Defendants' misstatements had no impact on the billing and payment of this claim. Defendant Rubin spoke with someone at Superior Vision. *See* Relator's Complaint at ¶ 62. This billing practice did not and **would not affect the payment of the claim**. *Id*. Superior Vision took **no adverse actions** and instead offered Mr. Rubin video technology assistance on proper billing procedures. *Id*. Notably, the contract between Defendant

---

[9] "[I]f the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material. Or, if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material." *Universal Health Servs*.,136 S. Ct., 2003-2004.

and Superior Vision provides a fixed rate for eye examinations, regardless of the doctor. *Id.* Additionally, in the quoted section of Mr. Rubin's prior deposition testimony, it specifically states: "It doesn't matter in terms of the billing and they don't care." *See* ECF #1 at ¶49. These are Relator's ***own*** averments of fact in ***her*** Complaint; she herself *emphasized* these facts – that "*Defendant Rubin declared under penalty of perjury*" – in a failed attempt to double-down on those facts she (wholly erroneously) believed would have supported her claims.

Quite simply, Relator cannot meet the demanding materiality standard here. This is the exact type of claim that the United States Supreme Court deemed insufficient in *Universal Health*. There are no factual allegations to show otherwise. Defendants are entitled to judgment as a matter of law on all Counts.

### C. The Information Upon Which Relator's Claim is Based Was Already Publicly Disclosed, Such That Relator Cannot Be An Original Source

It is well established that a relator's suit under the False Claims Act fails as a matter of law where the allegations alleged have already been subject to "public disclosure." *U.S. ex rel Moore & Co., P.A. v. Majestic Blue Fisheries, LLC,* 812 F.3d 294 (3d Cir. 2016). The False Claims Act specifically provides, in pertinent part:

> The court **shall dismiss an action or claim under this section** . . . if substantially the same allegations or transactions as alleged in the action or claim **were publicly disclosed**--(i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accountability Office, or

other Federal report, hearing, audit, or investigation; or (iii) from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C.A. § 3730(e)(4)(A).

Relator's allegations of fact were widely spread on internet websites available to the public, which constitutes a public disclosure under the "news media" exception. *U.S. ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 2014 WL 4375638 (E.D. Pa. September 4, 2014) (data from an online database that would permit an interested party to uncover fraudulent activity was a public "news media" disclosure); *see also U.S. ex rel. Green v. Service Contract Educ. And Training Trust Fund*, 843 F.Supp.2d 20 (D.D.C. 2012) (information on union's website, that was accessible to the public, was a public "news media" disclosure). Publication on a website qualifies as "news media" as "ample precedent in favor of broad construction of the channels of public disclosure[.]" *Customs Fraud, citing* U.S. ex rel. Doe v. Staples, Inc., 932 F.Supp.2d 34, 40 (D.D.C. 2013). A website qualifies as a public disclosure where it is (1) "easily accessible by any stranger to the allegedly fraudulent transaction . . . and [the] material [is] regularly published;" (2) a person interested "would not need to be involved in the transactions to see" the disclosure; (3) the disclosure "would allow an outsider to make an inference of fraud." *U.S. ex rel. Repko v. Guthrie Clinic, P.C.*, 2011 WL 3875987, *8 (M.D. Pa. Sept. 1, 2011) *affirmed by U.S. ex rel. Repko v. Guthrie Clinic, P.C.*, 490 Fed.Appx.

31

502 (3d Cir. 2012).

*Customs Fraud* is instructive here. In *Customs Fraud* Victaulic was accused of failing to mark its products as "foreign-made" and subsequently falsifying customs forms. *Customs Fraud*, 2014 WL 4375638 at *1. In response, Victaulic argued that the data, which relator based their claim, was publicly available on the website database Zepol. *Id.* at *10. Zepol collects data from the United States Bureau of Customs and Border Protection and compiles it into a searchable database available to its subscribers. *Id.* Zepol offers its subscription to the press and the public. *Id.* The data public on Zepol is the exact same data used by relator in an attempt to support claims of FCA violation. *Id.* As such, the Court held these were public disclosures as "news media." *Id.*[10]

Here, the opinion of the Court in the Underlying Lawsuit, was published on several publicly accessible websites. See, e.g., https://www.docketbird.com/court-documents/Alejandro-v-Philadelphia-Vision-Center/MEMORANDUM-AND-OPINION-SIGNED-BY-HONORABLE-HARVEY-BARTLE-III-ON-8-29-18-8-29-18-ENTERED-E-MAILED/paed-2:2018-cv-02150-00021. A copy of the publicly accessible Docket bird website is attached hereto as Exhibit "C."

---

[10] See, also, *United States, ex rel. George v. Fresenius Medical Care*, 2015 WL 12819145 at *2. (Relator's allegations were publicly disclosed two months prior to lawsuit where the Government unsealed a similar Complaint with similar allegations on the public docket.)

Judge Bartle described the identical factual backdrop of Alejandro's FCA allegations in his opinion issued dismissing the Underlying Lawsuit:

> *Although Dr. Johnson administered the eye exam to Alejandro, PVC Welsh and Rubin mistakenly used a billing code for a different PVC Welsh optometrist, Beth Lisa Brooks, O.D., who had never examined Alejandro. After the error was discovered at some time during discovery in this action, PVC Welsh [(Barco)] and Rubin notified the holder of Alejandro's vision insurance plan, which covered the eye exam. This error did not impact the billing or coverage of Alejandro's vision insurance plan.*

Memorandum at p. 4, 29 August 2018, *Alejandro v. Philadelphia Vision Center*, No. 18-2150 (E.D. Pa. 2018) (ECF #21).

Similarly, documents available on the Public Access to Court Electronic Records ("PACER") website should be considered public records utilizing the *Customs Fraud* framework. PACER is advertised as "electronic public access to **federal court records**. PACER provides the public with **instantaneous access to more than 1 billion documents** filed at all federal courts." [11] (emphasis added). Each document filed in the Prior Action was immediately available on PACER within minutes of the filing being accepted, each document filed in that action is still available to the public on PACER right now. Just like Zepol in *Customs Fraud*, PACER is a website database that collects all documents filed in federal court and provides them to the public for a small fee. The rationale in *Customs Fraud* is easily applied to the case at bar where the identical allegations of fraudulent conduct made

---

[11] https://pacer.uscourts.gov/

by the Relator against Defendants were available to the public on a website database. Notably, Relator accused Defendants of the same allegedly fraudulent conduct at issue here in court filings in the Prior Action, which are available on PACER.

Additionally, govinfo.gov collects all federal district court opinions and provides them to the public at no cost at all. Any individual can easily download Judge Bartle's complete opinion at govinfo.com without the burden of paying $3.00 for a court filing on PACER.[12] See, PACER screenshot attached hereto as Exhibit "D." Thus, as discussed *supra*, the factual backdrop for Relator's allegations of "fraud" were further published on government websites and available to the public long before she ever notified the government for this FCA action and so too was Bruce Rubin's Declaration (attached to the Motion for Summary Judgment in the Prior Action), which publicly disclosed his error further. See, *Alejandro v. Philadelphia Vision Center*, No. 18-2150 (E.D. Pa. 2018), Declaration of Bruce Rubin at ¶¶ 13-19 (ECF #20-10), also attached hereto as Exhibit "B."

Furthermore, and even more glaring to the issue of prior disclosure, Defendant Rubin reported the billing error to Superior Vision, long before Relator disclosed any information to the Government, which also compels judgment in Defendants' favor:[13]

---

[12] https://www.govinfo.gov/app/details/USCOURTS-paed-2_18-cv-02150/USCOURTS-paed-2_18-cv-02150-0

[13] An additional salient point remains that Relator only learned of the billing error

On March 27, 2018 I was deposed by Mr. Stewart and provided him with certain documents he requested. One of these documents was the EOB indicating we were paid for the exam done in December by Dr. Johnson. On the EOB it indicated that Beth Brooks was the provider. Mr. Stewart is now insisting that I have committed Insurance fraud based on what I believe would be classified as a billing error. As I'm sure you are aware, for billing purposes, ***I have only <u>one</u> login and it is under Dr. Brooks NPI. All payments however, whether for glasses, contacts or exams are issued to Philadelphia Vision Center.*** I have been billing most services under Dr Brooks as it is more efficient, and I certainly wouldn't want to find out that I was unknowingly committing a crime.

Moving forward, it would be a great help to me if you could write me a letter indicating that you are aware of my billing practices and that that you don't intend to pursue criminal charges against me. As far as billing in the future, I have begun logging out, and logging back in to separate the claims for each doctor's exams. Is that something you require? Who's name should I bill under for glasses? Are there any written guidelines available to explain exactly how the billing should be done [?]

*Id*.

"If the disclosure 'puts the government on notice of the 'possibility of fraud' surrounding the … transaction, the prior disclosure is sufficient." *U.S. ex rel. Advocates for Basic Legal Equality, Inc. v. U.S. Bank, N.A.*, 816 F.3d 428, 431 (6th Cir. 2016) (holding that consent decree between Defendant and government was a public disclosure).  It would further be an absurd result to permit Relator's claim to continue where an agent of the government, to which the alleged error was initially directed, was directly informed of the allegations at issue years before relator filed

---

through the testimony of Bruce Rubin in a separate matter, where she was never present, but instead learned of this information from her (same) Counsel.

her claims.[14]

Despite the overwhelming precedent to the contrary, Defendants fully anticipate that Relator will claim she is an original source of the information contained in her complaint. The FCA provides:

> "'original source" means an individual who either (i) **prior to a public disclosure** under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the government before filing an action under this section."

*Id*. at (e)(4)(B).

Relator is not an original source. She did not disclose the information that forms the basis of her allegations in this suit until *two years after the allegations were publicly disclosed*.[15]

Under the second scenario, a relator must have knowledge that is "independent of **and** materially adds to the publicly disclosed allegations or

---

[14] If the third-party can be considered the government for purposes of *receiving* these allegedly erroneous statements, then so too would it be the government when Defendants are *reporting* the error.

[15] Relator's Counsel first contacted the government (not by coincidence) within days of the denial of their Motion for Summary Judgment in the *Dragonetti* Action, where Relator and her Counsel were (and remain) Co-Defendants, based entirely on the same baseless accusations, which Relator and her Counsel still peddle in their action at bar.

transactions." *Id*. The independency argument "requires courts to compare the relator's knowledge with the information that was disclosed through the public disclosure sources." *Moore & Co., P.A.,* 812 F.3d at 305. In order to meet this materiality provision, the relator must "contribute significant additional information to that which has been publicly disclosed so as to improve its quality." *United States v. Medtronic, Inc.*, 327 F. Supp. 3d 831 (E.D. Pa. 2018) (citing *Moore*, 812 F.3d at 306).

Here, the information that forms the basis of Relator's FCA claims are identical to the information that was publicly disclosed years before her counsel contacted the Government. Relator's Complaint makes plain that the basis of her knowledge of the alleged claims are the statements Defendant Rubin made in his deposition and those he made to Superior Vision. Relator quotes directly from this letter. Simply put, her allegations add nothing to what has already been publicly disclosed.

There is no scenario where Relator could be considered an "original source" of the information. Defendants are entitled to judgment pursuant to the public disclosure bar of the FCA.

**D.   The Intracorporate Conspiracy Doctrine Precludes Relator's Claim for an Alleged Violation of § 3729(a)(1)(C) (Count III)**

The intracorporate conspiracy doctrine precludes Relator's FCA conspiracy claim in Count III.

37

Where it applies, the intracorporate conspiracy doctrine stands for the proposition that "an entity cannot conspire with one who acts as its agent." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313-14 (3d Cir. 2003) (citation omitted). The intracorporate conspiracy doctrine is applicable in the context of the FCA conspiracy claim where any agreement that may have existed between Defendants regarding the alleged conduct would have been made with "complete unity of interest under one corporate consciousness." *United States v. Wavefront LLC*, 2021 U.S. Dist. LEXIS 912, *28-31, 2021 WL 37539 (D.N.J. 2021), citing *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313-14 (3d Cir. 2003); *see also, Pencheng Si v. Laogai Rsch. Found.*, 71 F. Supp. 3d 73, 89 (D.D.C. 2014) (explaining in the FCA context that under the intracorporate conspiracy doctrine, an entity "cannot conspire with its employees, and its employees, when acting within the scope of their employment, cannot conspire among themselves").

In addition to the overwhelming legal deficiencies of Relator's Complaint set forth, *supra*, Defendants are entitled to judgment on the pleadings on Relator's alleged violations of the FCA conspiracy clause because Defendant Brooks was a employee of Defendant Barco Optical (Complaint at ¶ 20). See, also, *Alejandro v. Philadelphia Vision Center*, No. 18-2150 (E.D. Pa. 2018), Affidavit of Bruce Rubin at ¶¶14-17 (ECF #20-10) ("Under terms of this plan, payments for services rendered

by doctors who work as *employees* of [Barco] are made directly to Barco Optical. The physicians who provide services do not receive payment directly from the vision plan.") and see, Memorandum at p. 4, 29 August 2018, *Alejandro v. Philadelphia Vision Center*, No. 18-2150 (E.D. Pa. 2018) (ECF #21) ("…Rubin mistakenly used a billing code for a different [Barco] optometrist, Beth Lisa Brooks, O.D… The optometrists who work at [Barco] do not receive payment directly from vision insurance plans.  Rather, they are paid a salary by [Barco].")

Accordingly, Relator's claims for FCA conspiracy fail under the intracorporate doctrine in addition to the overwhelming legal deficiencies of Relator's Complaint set forth, *supra*.

## V.   MOTION FOR ATTORNEYS' FEES FOR THE FRIVOLOUS, VEXATIOUS, AND HARASSING LITIGATION PURSUANT TO 31 U.S.C. § 3730 (d)(4)

"If the government does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for the purposes of harassment." 31 U.S.C. § 3730 (d)(4).

When reviewing a party's request for attorneys' fees and expenses under the FCA, the district court must look at the entire course of events, not simply whether

39

the relator lost the case. *U.S. ex rel. Atkinson v. Pennsylvania Shipbuilding Co.*, 528 F.Supp.2d 533 (E.D. Pa. 2007); *see also United States ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1059 (10th Cir. 2004). Defendants should be awarded their reasonable attorneys' fees and costs under the circumstances here.

This lawsuit can only be described as frivolous, malicious, vexatious, and harassing by Relator's Counsel,[16] who is seemingly willing to perpetuate frivolous litigation against Defendant Rubin *ad infinitum*, so as to avoid the impending investigation being conducted by the Disciplinary Board of the Supreme Court of Pennsylvania (that Mr. Rubin and his former counsel initiated against him for his conduct in the Prior Action), which cannot proceed until all the litigation between these parties end.

### A.    The Claims Are Frivolous

"A claim is clearly frivolous if it is 'utterly lacking in legal merit and evidentiary support." *Atkinson*, 528 F.Supp.2d at 543. "[T]he term 'meritless' is to be understood as meaning groundless or without foundation rather than simply that

---

[16] Defendants hesitate to lump Relator Alejandro into this characterization because evidence suggests she is unaware of this lawsuit; particularly so, where Relator's Counsel, Paul A. R. Stewart, Esq., was precluded from representing her in the *Dragonetti* Action on the grounds that she was advised "*Stewart cannot reasonably believe he can competently advise Ms. Alejandro when there is potential that some of the decisions they would have to make would require a choice between an option that is between for Stewart and one that is worse for him.*" See, 30 June 2020 Opinion of the Honorable Michael Erdos, attached hereto as Exhibit "E."

the plaintiff has ultimately lost his case." *Id.* The third circuit has counseled that several considerations should be made when determining whether a suit was clearly frivolous within the meaning of the FCA: (1) "whether the plaintiff established a prima facie case, (2) the defendant offered to settle, (3) the trial court dismissed the case prior to trial or the case continued until a trial on the merits,… (4) the question in issue was one of first impression requiring judicial resolution, [and] (5) the controversy is based sufficiently upon a real threat of injury to the plaintiff." *Id.* at 543-44 (*quoting Barnes Found. v. Township of Lower Merion*, 242 F.3d 151, 158 (3d Cir. 2001)).[17]

Relator's FCA suit is frivolous within the meaning of § 3730 (d)(4) and the guidance of the Third Circuit. Relator's complaint is based entirely on benign facts coupled with averments of "upon belief" for the wholly manufactured allegations of criminal conduct. A Relator's lack of personal knowledge and staunch reliance on their personal opinions is evidence of a frivolous claim. *U.S. ex rel. Minna Ree Winer Childen's Class Trust v. Regions Bank of Louisiana*, 1996 WL 264981 (E.D. La. 1996); *see also In re Natural Gas Royalties Qui Tam Litigation*, 845 F.3d 1010 (10th Cir. 2017) (realtor's fabrication of evidence leaving complaint devoid of any factual basis other than speculation properly established attorney's fees as a clearly

---

[17] Congress "intended the standard under § 3730(d)(4) to reflect the standard under §1988[,]" which permits the court to "rely on cases analyzing §1988 where relevant." *Atkinson*, 528 F. Supp. at 540, fn. 8.

frivolous claim). Relator's complaint is primarily based on speculation and "information and belief" which is indicative of a discovery "fishing expedition." *Id.* ("Indeed, [relator's] continued pleading of facts 'on information and belief' was precisely what led [the lower court] to suspect [relator] was on a discovery fishing expedition").

> 9.     Relator is *informed and believes* that the false claims described herein, including violations of the Medicaid Acts, began at least ten (10) years before the filing of this Complaint and continue to date.

> 11.     At all times relevant hereto, Defendants acted through their agents and employees and the acts of Defendants' agents and employees were within the scope of their agency and employment. The policies and practices alleged in this Complaint were, *on information and belief,* set or ratified at the highest corporate levels of Defendants.

> 28.     *Upon information and belief* defendants personally, or through each other are and for a substantial time have participated in Medicaid programs, submitted claims and received reimbursements from said programs.

> 30.     *Upon information and belief,* defendants continue to submit claims to Medicaid for optician and professional eye care services which constitute false claims under the False Claims Act.

> 51.     Upon *information and belief,* Barco Optical pays optometrists, including Brooks and optometrists do not receive reimbursements directly from insurance.

> 52.     *Upon belief* Dr. Brooks receives compensation for permitting Barco to bill using her designated NPI number despite having no contact with patient or providing any

service to Barco.

56.    *Upon information and belief*, Defendants have retained unlawful payments resulting from improper, false and fraudulent payment requests.

57.    *Upon information and belief,* since June 2018, 60 days after acknowledging false billing submissions and payments, Defendants have not notified Medicaid or relevant government agencies of any overpayment, or retention of payments resulting from improper, false and fraudulent payment requests.

As illustrated, *supra*, Relator's complaint is frivolous. The basis of much of her factual allegations, including those central to her FCA claim, are based "upon belief," which were wholly manufactured and even belied by the few averments of fact that actually reference reality. Most notably, Relator seeks to meet her falsity requirement pursuant to the AKS, which is based entirely on an unsupported accusation that Dr. Brooks was getting paid to use her NPI number, as opposed to her salary for treating patients. This allegation was manufactured with absolutely no good faith basis to levy such an accusation. At the most recent teleconference, when asked if the collective cases between these parties could settle, Relator's Counsel refused – "there will be no consent." Relator cited old and wrong law in her Complaint. The Supreme Court's rigorous and demanding rubric for "materiality" under the FCA has been well-understood since 2016 and the *Universal Health Services* decision, *supra*. Relator either ignored it entirely (showing a lack of thoughtfulness) or consciously omitted it.

43

Finally, there is absolutely no real threat of injury to the plaintiffs. This case is the cousin-twice removed from Relator's Prior Action, which sought damages for a one hundred ($100.00) pair of unpaid eyeglasses and an alleged two weeks without a prescription in hand. No government entity ever overpaid Defendants for services provided to Relator or anyone else.  Superior Vision took no adverse action. There is not even a manufactured allegation that they did.

**B.     The Vexatious and Harassing Conduct**

The procedural and factual history of this lawsuit and those that came before it (the Prior Action and *Dragonetti* Action) are further evidence that this lawsuit is vexatious and harassing nature.

This lawsuit was merely a strike suit in response to the state law *Dragonetti* Action pending before the Philadelphia Court of Common Pleas, now listed for the July, 2021 trial pool. *Hutchinson v. Staton*, 994 F.2d 1076 (4th Cir. 1993) (plaintiff's motive of revenge in bringing the suit permitted awarding of attorneys' fees). The Court is well-familiar with the record of both the Prior Action and the *Dragonetti* Action. Relator first contacted the United States for this *qui tam* suit, peddling the same baseless accusations of fraud, only days after the Court of Common Pleas of Philadelphia County denied their respective Motions for Summary Judgment in the *Dragonetti* Action.  "[P]ursuit of repetitious, unfounded litigation," as seen here, "is a hallmark of vexatiousness and results in an award of attorney fees." *Atkinson*, 528

44

F.Supp.2d at 544; *see also U.S. ex rel. Minna Ree Winer Childen's Class Trust v. Regions Bank of Louisiana*, 1996 WL 264981 (E.D. La. 1996) (attorneys' fees were properly awarded for third attempt at suit against defendant by relator; *"[s]uch litigious history is indicative of the ultimate goal—to vex and harass the defendants*[.]"*).

Accordingly, reasonable attorneys' fees and expenses should be awarded to Defendants for the costs in defending this action.

## VI.   <u>CONCLUSION</u>

Defendants respectfully request this Honorable Court grant Defendants' Motion Pursuant to Rule 12(c) and enter judgment in Defendants' favor as a matter of law.

Respectfully submitted,

**THE BEASLEY FIRM, LLC**

BY:   */s/ Lane R. Jubb, Jr.*
      LANE R. JUBB, JR., ESQUIRE
      LOUIS F. TUMOLO, ESQUIRE
      Attorneys for Defendants
      THE BEASLEY BUILDING
      1125 Walnut Street
      Philadelphia, PA 19107
      215.592.1000
      215.592.8360 (telefax)
      Lane.jubb@beasleyfirm.com
      Pa. I.D. No. 319272/314255

Dated: 10 March 2021