IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF PENNSYLVANIA ex rel. ALISHA ALEJANDRO,<br><br>   *Plaintiffs/Relator,*<br><br> v.<br><br>PHILADELPHIA VISION CENTER, et al.,<br><br>   *Defendants.* | CIVIL ACTION<br>NO. 20-2027 |

**PAPPERT, J.**                                    **March 17, 2023**

## MEMORANDUM

  Defendants move to disqualify attorney Paul Stewart from representing plaintiff Alisha Alejandro, his co-defendant in a prior action. After considering the parties' submissions and holding oral argument, the Court denies the motion because Defendants have failed to prove that Stewart's self-interest requires disqualification.

I

  In 2017, Alisha Alejandro, represented by Paul A.R. Stewart of Helm Legal Services, sued the Philadelphia Vision Center, Bruce Rubin, and Dr. Beth Brooks, alleging civil conspiracy and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, the Sherman Act, and the Clayton Act (the "underlying action"). *Alejandro v. Phila. Vision Center*, No. 18-2150, 2018 WL 4110554 (E.D. Pa. Aug. 29, 2018). After entry of summary judgment in the defendants' favor on some of Alejandro's claims and the stipulated dismissal with prejudice of the remaining claims, Rubin sued Alejandro and Stewart in state court for wrongful use of civil process (the

1

"Dragonetti[1] action"). *Rubin v. Paul A.R. Stewart Helm Legal Servs., LLC*, Nos. 2554 EDA 2021 & 2555 EDA 2021, 2023 WL 2003961 (Pa. Super. Ct. Feb. 15, 2023) (recounting history of case). At a pretrial conference in the Dragonetti action, the trial court disqualified Stewart from representing Alejandro, citing the "palpable and blatant" conflict of interest in an attorney's representation of his co-defendant. Alejandro proceeded *pro se*, and a jury returned a verdict in favor of Rubin. It awarded $580,000 in compensatory damages, attributing 50% each to Stewart/Helm Legal Services and Alejandro.[2] Recently, the Pennsylvania Superior Court affirmed both the disqualification and the jury's verdict. *Id.*

Alejandro is also the relator in this False Claims Act *qui tam* action against Philadelphia Vision Center, Barco Optical, Rubin, and Brooks. Defendants move to disqualify Stewart from representing Alejandro on the grounds that representation of a former co-defendant, with whom Stewart is jointly and severally liable for the Dragonetti judgment, presents a conflict of interest under Pennsylvania Rule of Professional Conduct 1.7. Defendants also argue that even if Rule 1.7 does not apply, Stewart must be disqualified under Rule 3.7 because he is likely to be a necessary witness in this action.

---

[1]   Pennsylvania's Dragonetti Act codifies the common law tort of wrongful use of civil process. 42 Pa.C.S. § 8351–54.

[2]   Stewart and Alejandro are jointly and severally liable for the damages. The jury also awarded punitive damages of $159,000 against Stewart/Helm Legal Services and $5,399.99 against Alejandro.

II

A

A district court may disqualify an attorney pursuant to its "inherent authority to supervise the professional conduct of attorneys appearing before it." *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). Even if the court finds that a disciplinary rule prohibits the attorney's appearance in the case, "disqualification is never automatic." *Id.* The court "should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule. It should consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions." *Id.* "Doubts should be resolved in favor of disqualification," but the movant bears the burden of clearly demonstrating that "continuing representation would be impermissible." *Shade v. Great Lakes Dredge & Dock Co.*, 72 F. Supp. 2d 518, 520 (E.D. Pa. 1999) (quotation omitted). Disqualification is a harsh measure, and motions to disqualify are disfavored in this District. *Martin v. Turner*, No. 10-1874, 2011 WL 717682, at *2 (E.D. Pa. Feb. 18, 2011) (collecting cases).

B

The Local Rules of the United States District Court for the Eastern District of Pennsylvania incorporate the Pennsylvania Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania. E.D. Pa. Civ. R. 83.6(IV)(B). Pennsylvania Rule of Professional Conduct 1.7 governs concurrent conflicts of interest:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if:

   (1) the representation of one client will be directly adverse to another client; or

   (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

   (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

   (2) the representation is not prohibited by law;

   (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

   (4) each affected client gives informed consent.

When an alleged conflict rests on a lawyer's self-interest, a "sturdier factual predicate must be evident than when a case concerns multiple representation" because "a lawyer's self-interest is, in theory, inherent in every case in which he participates." *Essex Cnty. Jail Annex Inmates v. Treffinger*, 18 F. Supp. 2d 418, 431–32 (D.N.J. 1998). For example, "a private practice attorney's interest in extending litigation to obtain greater fees is surely at odds with a client's interest in a swift and relatively inexpensive resolution of his case," yet this does not present "a real conflict in the eyes of the law." *Id.* at 432 (quotation omitted).

Defendants ask the Court to find, as the state trial court did in the Dragonetti action, that Stewart and Alejandro's status as (now former) co-defendants creates a

4

conflict of interest. This case is different. It does not present the same opportunity for Stewart and Alejandro to take positions adverse to one another. In the Dragonetti action, Alejandro could avoid or reduce her liability by blaming Stewart for the decision to file the original lawsuit. By contrast, Stewart is not a party to this case, nor is an examination of his conduct necessary to the resolution of Alejandro's False Claims Act allegations against Defendants.

As a practical matter, Stewart is on the hook for any portion of the Dragonetti judgment that Alejandro cannot pay—a likely outcome, as Stewart alleged at oral argument, given Alejandro's lack of financial resources. *See also Rubin*, 2023 WL 2003961, at *25 (quoting Alejandro's brief in which she described herself as "an indigent mother of three with below-poverty-level income who subsists primarily on welfare"). Defendants argue that this financial pressure will incentivize Stewart to push his client to extend the litigation unnecessarily, in the hopes of obtaining an award that can be used to satisfy her portion of the Dragonetti judgment. (Defs. Br. 10, ECF 66-2.) But, as the *Essex County* court acknowledged, the tension between a lawyer's desire to maximize the fees earned and a client's interest in expedient resolution is a temptation every attorney is expected to resist, not a conflict of interest in the eyes of the law. 18 F. Supp. 2d at 432. Moreover, in a *qui tam* action such as this, the relator sues on behalf of the United States—the injured party—in hopes of obtaining a share of the government's recovery. *See United States ex rel. Alejandro v. Phila. Vision Center*, No. 20-2027, 2021 WL 22870, at *4 (E.D. Pa. Jan. 4, 2021) (distinguishing Alejandro's interest in prior personal suit from interest of United States

in this *qui tam* action). To the extent Stewart has incentive to maximize any monetary award in this case, his interest is aligned with Alejandro's.

Even if a conflict existed under Rule 1.7, disqualification would not be appropriate at this juncture. In her brief opposing this Motion, Alejandro represents that if Stewart is disqualified, she will be unable to obtain new representation—a claim the Court credits given that Alejandro proceeded *pro se* after Stewart was disqualified in the Dragonetti action. If the same course of events were to occur here, it would be fatal to Alejandro's case because a False Claims Act relator may not litigate *pro se*. *Downey v. United States*, 816 Fed. App'x 625, 627 (3d Cir. 2020) (unpublished) (citing *Lazaridis v. Wehmer*, 591 F.3d 666, 672 (3d Cir. 2010) (holding *pro se* litigant may not represent third party in federal court)). As the situation now stands, Alejandro's interests are at greater risk from disqualification than they are from Stewart's continued representation.

C

Defendants also move for disqualification under Pennsylvania Rule of Professional Conduct 3.7, which provides that:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

    (1) the testimony relates to an uncontested issue;

    (2) the testimony relates to the nature and value of legal services rendered in the case; or

    (3) disqualification of the lawyer would work substantial hardship on the client.

(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9 [relating to conflicts of interest].

"A witness is deemed 'necessary' when he has 'crucial information' in his possession, which must be divulged. . . .  If the evidence the witness possesses is cumulative or can be obtained elsewhere, it will not be deemed 'necessary.'" *AAMCO Transmissions, Inc. v. Baker*, No. 06-5252, 2008 WL 5272781, at *2 (E.D. Pa. Dec. 18, 2008).  The remaining claims in this case stem from Defendants' practice of submitting claims using an improper NPI number.  Alejandro allegedly lacks personal knowledge of these practices, which Stewart discovered in his investigation of the underlying action.  Defendants argue that because of this, Stewart will be a necessary witness at trial on the subjects of "his telephone conversations with [the doctor whose NPI number was improperly used], what he did to obtain the NPI information, and his recollection of the events surrounding Mr. Rubin's deposition in the underlying . . . [a]ction." (Defs. Br. 11, ECF 66-2.)  Defendants have not shown that information about Stewart's investigation is "crucial" in this case, let alone that he is the only available source of such information.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*<br>GERALD J. PAPPERT, J.

7